UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ANTHONY BRADFORD HICKS | ) | CASE NO. 22-31254(1)(7) |
| | ) | |
| Debtor | ) | |
| | ) | |
| PAUL RANDOLPH, U.S. TRUSTEE | ) | |
| | ) | |
| Plaintiff | ) | AP NO. 23-03005 |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY BRADFORD HICKS | ) | |
| | ) | |
| Defendant | ) | |

**MEMORANDUM-OPINION**

This matter came before the Court for trial on September 20, 2023 on the Complaint filed by Paul A. Randolph, United States Trustee ("UST") against the Defendant/Debtor Anthony Hicks ("Debtor") seeking the denial of the Debtor's discharge in his Chapter 7 case, pursuant to 11 U.S.C. § 727(c)(1) and Fed. R. Bankr. P. 7001.  The Court considered the testimony of the witnesses, the Chapter 7 Trustee, Stephen Reisz, Bankruptcy Auditor, Gary Grimes and the Debtor Anthony Bradford Hicks.  For the following reasons, the Court will enter Judgment in favor of the UST and against the Defendant denying his discharge in Chapter 7 Case No. 22-31254.

## FACTS

On July 4, 2022, the Debtor, filed his Voluntary Petition under Chapter 7 of the United States Bankruptcy Code, which included Schedules A/B, C, D, E/F, I and J (the "Schedules") and the Debtor's Statement of Financial Affairs. The Debtor swore that the information contained in each of the documents was true and correct under the penalty of perjury.

Debtor resided at 3803 Ballard Woods Court, Smithfield, KY 40068-9330, at the time he filed his Petition and at the time of trial.

The Debtor disclosed the following information in his Schedules that existed as of July 4, 2022:

a. Schedule A/B Question 7, that he had no legal or equitable interest in any "electronics" such as "computers" or "electronic devices ...."

b. Schedule A/B Question 9, that he had no legal or equitable interest in any equipment for "sports and hobbies" such as any "... exercise, and other hobby equipment ...."

c. Schedule A/B Question 17, that besides one checking account at Farmers Bank of Milton in the approximate amount of $2,000, he had no legal or equitable interest in any other accounts such as "checking, savings, or other financial accounts...."

d. Schedule A/B Question 18, that he had no legal or equitable interest in any "bonds, mutual funds, or publicly traded stocks."

e. Schedule A/B Question 21, that he had no legal or equitable interest in any "retirement or pension accounts."

f. Schedule A/B Question 35, that he had no legal or equitable interest in any other financial assets not already listed.

2

On July 5, 2023, attorney, William Stephen Reisz, was appointed the Chapter 7 Trustee in Debtor's case.

Debtor's Chapter 7 First Meeting of Creditors occurred on August 16, 2022.

On August 21, 2022, the Debtor with the advice of his attorney, Nick Thompson, filed Amended Schedules A/B and C. The Debtor signed the amendment on August 4, 2022. The amendment disclosed that on July 4, 2022, the date the original Petition and Schedules were filed, Debtor also had an interest in (1) an Ameritrade Roth IRA, (2) an Ameritrade Traditional Roth IRA, and (3) a Robinhood Trading Account.

Following the First Meeting of Creditors and the Debtor's First Amendment to the Schedules, Trustee Reisz engaged the services of Edward Durnil, an auctioneer, to inspect the Debtor's residence and surrounding property. The Trustee was attempting to determine whether there were any issues with the Property, as well as the true value of the Property to determine if there was equity in the Property should he decide to sell it.

Mr. Durnil called the Chapter 7 Trustee after his inspection and informed him that there was a large amount of "gym quality" exercise equipment located inside the house. Mr. Durnil provided a written report with pictures of the home and its contents including the exercise equipment. *See*, Joint Exhibit 5.

Trustee Reisz then notified Debtor's attorney that he needed to file an amendment to the Debtor's Schedules to include the exercise equipment, along with the price paid for each piece of equipment and its current value.

On September 20, 2022, Debtor testified under oath at a Second Chapter 7 Meeting of Creditors. Debtor also filed a Second Amendment to the Schedules. The list contained 15 pieces

3

of gym equipment including the date the piece was purchased, the purchase price and the Debtor's estimated current value of the equipment. The amendment stated that the equipment was jointly owned with his wife and that the Debtor claimed an exemption in 50% of the combined listed value of the equipment.

The exercise equipment was purchased on different dates between March 2020 and February 2022. The total purchase price of the equipment was $41,038.99. Debtor's stated value of the equipment on the amendment to his Schedules was $5,160.

The Trustee contacted Tim Hartledge with Hoist Fitness, and asked him to value the equipment for resale. Mr. Hartledge estimated he could resell the equipment for approximately $16,800.

The Debtor's home was listed on Debtor's Schedules as valued at $600,000. The Trustee determined there was equity in the house. Several months prior to the bankruptcy, Debtor had added a swimming pool and fire pit that cost approximately $145,000. Although there was equity in the house, the Trustee did not pursue a sale of the home or the equipment due to the wife's interest in the home and their pending divorce.

Trustee Reisz testified at trial that he asked the Debtor while he was under oath, whether he had listed all of his assets and whether there were any errors in his Schedules. The Debtor had replied, other than the two retirement accounts and the Robinhood account, that were later contained in the First Amendment to the Schedules, there were no other unlisted assets.

Gary Grimes, a bankruptcy auditor employed by the United States Trustee's Office, also attended the Debtor's First Meeting of Creditors and testified at trial. Mr. Grimes established that the Debtor had a history as a high wage earner including earnings of approximately $560,000 in 2020

and $460,000 in 2021. At that time, Debtor had been working as a mortgage broker for a bank. On Schedules I and J, Debtor listed his present income as $4,000 per month with a note indicating that at some point this amount would be reduced. The Schedules listed $700,000 of debt. On Schedule D, Debtor listed stock sales of $128,619 and losses of $73,798, yet no brokerage accounts were listed on the Schedules. Grimes testified that all of these things raised red flags that needed further investigation.

Grimes testified that after an Order was entered requiring the Debtor to turnover further tax returns and banking records, Grimes discovered there were transfers from Debtor's PNC Bank account to Coinbase[1], UBS, TD Ameritrade and Paypal accounts. Grimes requested Debtor's attorney to turnover the documents related to these accounts. None of the accounts had been listed on Debtor's Schedules, but Debtor's attorney provided the documents to Grimes prior to the Meeting of Creditors. Grimes asked Debtor at the First Meeting of Creditors why none of the cryptocurrency accounts were listed on his Schedules and Debtor responded that the accounts had no value on the date the Petition was filed.

At the end of the First Meeting of Creditors, Debtor was asked by Grimes whether he had any other assets of value greater than $10.00 or more that were not listed and Debtor replied, "no." Debtor's attorney followed up Grimes' questioning and asked if there were any other assets that he may have forgotten to list and Debtor replied, "no, other than the Roth IRA and the Robinhood account" he had previously disclosed.

Grimes reviewed the Debtor's American Express statements dated within 90 days of the filing date of the Petition and determined that Debtor had purchased an Apple computer valued at

---

[1]Coinbase is an online platform for buying and selling cryptocurrency.

$6,358.94 and software of $1,694.94 in March 2022. Neither the computer, nor the software were disclosed on Debtor's Petition.

On March 30, 2023, Debtor filed his Third Amendment to his Petition. The Third Amendment listed the Apple computer and software, as well as three big screen tvs and various electronics and a zero-turn lawnmower valued at $1,000.

After the Meeting of Creditors, Grimes asked Debtor through his attorney if there were any other assets undisclosed and Debtor through his attorney provided the inventory and invoices for the weight-lifting equipment which totaled $41,038.99, an invoice for a spa, pool and fire pit he had installed in April 2022 for $145,450, and an account summary from a Coinbase account which detailed inflows and outflows from Debtor's cryptocurrency trading and investing platform account for January 1, 2021 through July 31, 2022.

Pursuant to an Order granting the UST's Motion for 2004 Examination, the Debtor provided documents and testified under oath regarding his Coinbase brokerage platform. These records established the following: in 2020 Debtor had gross proceeds from trades, sales or transfers totaling $4,600. In 2021 he had gross proceeds of $19,829,954.62. In 2022 he had gross proceeds of $1,177,597.76.

Grimes, after reviewing the documents produced on the Coinbase account, determined that Debtor had two accounts, a retail Coinbase account and a Coinbase Pro-Trading account. The documents showed over 66,000 transactions between July 2021 and 2022 with transactions totaling $20,000,000.

The accounts were difficult to interpret because the platform of cryptocurrency is designed to be anonymous. From Grimes' review, he determined there were at least 51 "wallets" in the

6

documents, but this did not mean that all of the Debtor's transactions were included in these documents. The "wallet" is a form of digital storage by which the cryptocurrency assets can be accessed. The "wallet" allows users to store money in a virtual wallet where the money can be transferred in and out for transactions, as well as off-chain transactions. Grimes reviewed the documents and determined there were $155,121.66 in purchases and sales in reference to the "wallets." However, Debtor could not provide an explanation as to what happened to the $155,121.66.

On the date of trial, Debtor filed a Fourth Amendment to his Schedules. This amendment showed a gain of $.01 in the Coinbase account, and zero in the Coinbase Pro-Trading account on the date the Petition was filed.

Debtor also provided a report generated by Tyler Rucker, an individual knowledgeable on cryptocurrency. A report was also generated by Koinly, a third party, who provides reports on capital gains and losses in cryptocurrency accounts. The report produced on Debtor's accounts were for tax years 2021 and 2022. The report for 2021 showed gross proceeds of $19,829,954 and $1,777,597.76 in proceeds for 2022. However, Debtor's tax returns for both years do not show any of these proceeds. In fact, the tax form specifically asked, "did you receive or sell any financial currency?" For 2020, Debtor replied, "no." The 2021 tax returns stated "did you receive or sell any virtual currency?" Debtor's response was, "no." Debtor maintained at trial that there were no funds in the Coinbase Pro or Retail accounts on the date his Petition was filed.

It was clear from both Grimes' testimony and the Debtor's testimony that the Koinly report established approximately 60,000 purchases and sales transactions using 51 "wallets" in the Pro account. Fees of $38,000 were charged, but there was no accounting for the approximately

$155,121.66 in purchases and sales. More importantly, none of the Debtor's Coinbase accounts were originally disclosed on his Petition and Schedules.

## LEGAL ANALYSIS

The United States Trustee filed this Adversary Proceeding against the Debtor on February 28, 2023. The UST asserts that the facts, as set forth above, based on the trial testimony, require the Court to deny the Debtor a discharge pursuant to 11 U.S.C. § 727(a)(4)(A), § 727(a)(2) and § 727(a)(5).

    A. <u>11 U.S.C. § 727(a)(4)(A)</u>.

The first Count of the UST's Complaint that provides the basis for the denial of Debtor's discharge is 11 U.S.C. § 727(a)(4)(A). The statute, in pertinent part states:

> (a) The court shall grant the debtor a discharge, unless
> . . . . .
> (4) The debtor knowingly and fraudulently, in or in connection with the case –
>     (A) made a false oath or account.

In order for the Court to deny the Debtor a discharge under § 727(a)(4)(A), the UST has to prove the following by a preponderance of the evidence: (1) the Debtor made a statement under oath, (2) the statement was false, (3) the Debtor knew the statement was false, (4) the Debtor made the statement with fraudulent intent, and (5) the statement related materially to the bankruptcy case. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685 (6th Cir. 2000).

False oaths can be either in the form of a direct false statement or an omission. A false oath may also be made by a debtor in the course of a bankruptcy proceeding, including false statements in the bankruptcy Schedules. *Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 725 (B.A.P. 6th Cir. 1999). The omission must be material. The statement is material if it concerns the discovery of assets or the existence and disposition of the debtor's property. *Keeney*, 227 F.3d at 686.

Whether the subject matter of the false oath is "material" is whether or not it "bears a relationship to the bankrupt's business transactions or estate, or concerns to the discovery of assets, business dealings or the existence and disposition of his property." *Keeney*, 227 F.3d at 685, quoting *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992). While the Court may find fraudulent intent from all of the facts and circumstances of the case, the debtor is entitled to a discharge if the false statements are the result of a mistake or inadvertence. *Id.*

The evidence presented at trial by the UST overwhelmingly established that the Debtor's repeated omissions in both his Schedules and Statement of Affairs, as well as his testimony at the First Meeting of Creditors, were made knowingly and either with fraudulent intent or reckless disregard as to whether the information was true or not. There was no credible evidence presented that the Debtor's omissions were the result of a mistake or inadvertence.

The Debtor's omission of nearly $42,000 in gym equipment, which according to the pictures presented at trial, took up an entire room in his home, was either made with fraudulent intent or reckless disregard as to whether the omission was true or not. The equipment was not listed on the Debtor's initial Schedules and was not discovered until the Chapter 7 Trustee sent an auctioneer to inspect the Debtor's home. It was not until the Trustee saw pictures of the equipment taken by the auctioneer and informed Debtor's attorney that the Schedules had to be amended to include the equipment that the Debtor filed his Second Amendment to his Schedules. Given the amount of equipment, its prominence in Debtor's home, and the amount paid by the Debtor for the equipment, it is not credible that the failure to list the equipment was a mere oversight.

Debtor testified at trial that he mentioned to his attorney when they were preparing his Petition, that he owned some exercise equipment. Debtor claims that his attorney told him "no one

9

was interested in his exercise equipment." The Court is not persuaded that the omission of the equipment was done on the advice of his attorney. The Debtor did not call Mr. Thompson as a witness at trial in support of his claim regarding the equipment or for anything else for that matter. The Debtor did not disclose the equipment until he was notified by the Chapter 7 Trustee that he needed to disclose the equipment and amend his Schedules. The 15 pieces of equipment had been purchased on different dates between March 2020 and August 10, 2021, within a year of the filing of his Petition. It simply is not credible that the Debtor overlooked this valuable asset.

Furthermore, both Mr. Grimes and the Trustee at the 341 Meeting asked the Debtor if he had reviewed the Petition and Schedules prior to signing them, whether he had listed all of his assets and whether there were any errors or omissions. The Debtor responded that he omitted two small Ameritrade accounts and the Robinhood account which totaled $158.95 and amended his Schedules to disclose these. However, Debtor needed prompting by the Chapter 7 Trustee to recall the "gym quality" workout equipment and to amend his Schedules a second time to include this asset.

It is also clear that the Debtor's denial at the 341 Meeting that he had not failed to disclose any assets, were statements that related materially to the bankruptcy case. This omission meets the fifth element of a claim under § 727(a)(4)(A) as set forth in *Keeney*. The failure to list the valuable equipment which was purchased within a year of the Petition was not an oversight. The five elements set forth in the *Keeney* case are met herein and establish that the Debtor should be denied a discharge under 11 U.S.C. § 727(a)(4)(A) of the Bankruptcy Code.

    B. <u>11 U.S.C. § 727(a)(2)</u>.

The UST also claims Debtor violated 11 U.S.C. § 727(a)(2), which provides that the Court shall grant a debtor a discharge unless:

10

. . . . .

> (2) the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under the title, has transferred, removed, destroyed, mutilated or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed –
>
> > (A) property of the debtor, within one year before the date of the filing of the petition; or
> >
> > (B) property of the estate, after the date of the filing of the petition;

In order to prove a claim under § 727(a)(2), the UST had to prove the following: (1) a disposition of property, such as concealment and (2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act of disposing of the property. *In re Keeney*, 227 F.3d at 683. The transfer must have occurred in the year before the debtor filed for bankruptcy. *McDermott v. Kerr (In re Kerr)*, 2017 WL 3880875, at 9 (Bankr. N.D. Ohio, August 30, 2017).

The evidence at trial established that in addition to concealing the gym equipment, Debtor made the following payments to creditors within ninety (90) days of the filing of the Petition: $2,799.19 paid to Sunset Fiberglass Pools on 4/21/22; $9,908 to Lending Tree on 4/5/22; $6,287.49 to Douglas Grahamed on 4/9/22 and $1,694 to Apple on 4/7/22. These payments were not listed on Debtor's Schedules and were well within the one year time period before the filing of Debtor's Petition.

Gary Grimes testified he reviewed several of Debtor's credit card statements, including his American Express account. During this review, he discovered that within ninety (90) days of the filing of his Petition, Debtor had purchased an Apple computer worth $6,358.94 and software worth $1,694.94 for use on the computer. None of this was disclosed on Debtor's Petition. However, once the information was discovered by Mr. Grimes, Debtor amended Schedules A and B for the third

11

time on March 30, 2023, to include these items along with several tvs and a zero-turn lawnmower that Debtor valued at $1,000.

Debtor testified that he told his attorney, Mr. Thompson, that he had the zero-turn lawnmower and that his attorney ignored it. He also testified that his attorney minimized the fact that he had a number of tvs and led him to believe the items were of little value. Debtor also claims he told Mr. Thompson about the Apple computer and again Mr. Thompson led him to believe it was of little value.

In essence, Debtor claimed these items were not listed based on advice of counsel. However, as noted in the foregoing discussion on assets not included in the Schedules on the advice of counsel, the Court has only the Debtor's testimony on this point. The Debtor did not list Mr. Thompson as a witness and he was not offered as a witness at trial in support of the Debtor.

Another problem with Debtor's reliance on the advice of counsel defense is that the Debtor swore in his testimony at the First Meeting of Creditors that the information contained in his Schedules was complete and accurate, when in fact it was not and Debtor was aware of that fact. He repeatedly answered yes when asked if he had listed all of his assets. This clearly was not true and accurate.

In order to establish a claim under 11 U.S.C. § 727(a)(2), there must be proof of (1) concealment of estate property, and (2) a subjective intent on the debtor's part to hinder, delay or defraud through the act of concealment. *Keeney*, 227 F.3d at 683. Debtor's counsel specifically asked Debtor at the First Meeting of Creditors if he had disclosed all of his assets on his Petition and the Debtor replied he had. More importantly, once the UST discovered the existence of these assets the Debtor amended his Schedules at least three times to list items not previously disclosed. The

Court may conclude, based on Debtor's course of conduct in this case that Debtor had fraudulent intent in not disclosing these assets.

Debtor contended throughout his cross-examination by his current counsel that he disclosed all of his assets to Mr. Thompson. However, according to Debtor, Mr. Thompson told him not to list the exercise equipment and other items he failed to list on his Schedules. If this was the crux of Debtor's defense in this adversary proceeding, there is no explanation by Debtor as to why he did not call Mr. Thompson to testify on his behalf. The advise of counsel defense when used in the context of a denial of a discharge proceeding based on a Chapter 7 debtor's failure to disclose assets, requires debtor's actual and good faith reliance on his attorney's advice. *Swegan v. Swegan (In re Swegan)*, 383 B.R. 646, 656 (B.A.P. 6th Cir. 2008).

Here, the court does not find Debtor's reliance on advice of counsel defense helpful since the Debtor failed to call his attorney as a witness. In *Eifler v. Wilson & Muir Bank & Trust Co.*, 588 Fed. Appx. 473, 479 (6th Cir. 2014), the Court rejected the debtor's claim of reliance on advice of counsel in failing to disclose certain transactions in his bankruptcy filings, where debtor failed to establish he relied on his attorney's advice, and where debtor had reviewed the Schedules several times before they were filed with the court. Nor was there any evidence that the attorney had advised the debtor not to disclose certain transactions. An advice of counsel defense requires (1) full disclosure of all pertinent facts to counsel, and (2) good faith reliance on counsel's advice. *Id.* at 479-80. In this case, Debtor failed to establish the essential elements of the defense of reliance on advice of counsel.

The evidence at trial established that the Debtor with intent to hinder, delay or defraud the Chapter 7 Trustee, concealed assets of the estate from the Chapter 7 Trustee. The Court determines

13

that based on the above evidence, the Debtor is not entitled to a discharge due to his actions which violated 11 U.S.C. § 727(a)(2).

    C. <u>11 U.S.C. § 727(a)(5)</u>.

The UST's final claim is that Debtor also violated 11 U.S.C. § 727(a)(5), which provides that the Court shall grant the debtor a discharge, unless:

> (5)      the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

Under 11 U.S.C. § 727(a)(5), the UST had the initial burden of proving substantial and identifiable assets that debtor owned at a time not too far removed from the bankruptcy that were no longer available to creditors. *Vara v. McDonald (In re McDonald)*, 29 F.4th 817, 823 (6th Cir. 2022). While the Code does not set forth a definite time frame as a look back period, a two year period prior to the filing of the debtor's petition is common, as long as they are not too far removed. *Id.* at 822-23. Once the assets are identified, the burden shifts to the debtor to offer a satisfactory explanation for the loss of assets. *Id.*

In support of this claim, the UST states that despite repeated requests for an explanation of the proceeds from several cryptocurrency accounts, Debtor was unable to produce sufficient documentation from the accounts to sufficiently explain the loss of assets. The evidence at trial through Mr. Grimes established that Debtor had several cryptocurrency accounts, including the Coinbase account, accounts with TB Ameritrade, UBS and Paypal, through which he actively traded large sums of money in 2020 through 2022. None of these accounts were included on his Schedules. It was not until the UST received an Order from this Court allowing the 2004 Examination of the Debtor that Debtor revealed the extent of this trading on the cryptocurrency platforms.

An expert hired by the UST to review the cryptocurrency reports showed the following: in 2021– gross proceeds from sales were $19,829,954, and in 2022 – the amount was $1,777,597.76. Neither the Debtor's tax returns for 2021 and 2022 disclosed this asset, in fact, Debtor stated on the returns that he did not receive or sell any virtual currency.

The documents ultimately produced established that between July 2021 and 2022 Debtor had engaged in over 66,000 transactions on these platforms with the transactions totaling over $20,000,000. The documents established that in 2021 Debtor had gross proceeds from cryptocurrency accounts of $19,829,954 and $1,777,597 in proceeds for 2022. Debtor testified at trial that he did not disclose any of these accounts because there were no funds in the Coinbase account on the date his Petition was filed.

However, from Grimes' review of the records Debtor had been charged $38,000 in fees on these accounts and approximately $155,000, net of losses, was generated from the accounts for which Debtor could not account. None of these transactions were revealed by Debtor in his Schedules, nor on his tax returns despite the fact the tax form specifically asked whether Debtor had received or sold any virtual currency to which Debtor responded "no." It was not incumbent on the UST to discover what happened to the $155,000. Mr. Grimes established through his review of the Coinbase account that Debtor generated $155,000 from transactions in the wallets. Debtor, however, did not offer the Court any explanation as to what happened to these proceeds. This is a clear violation of § 727(a)(5).

Just as Debtor did with his three prior amendments to his Petition, on the date of trial, Debtor filed his Fourth Amendment showing that he had gains of $.01 in his Coinbase account, and his Coinbase Pro-Trading Account had a zero balance on the date the Petition was filed.

The Court heard extensive testimony regarding Debtor's transactions in various cryptocurrency accounts over the two to three years prior to the filing date of Debtor's Petition. Most of the research was done by Mr. Grimes, as the Debtor had not disclosed any cryptocurrency transactions on his Schedules. Considering the large volume of transactions, as well as another amendment filed on the date of trial showing gains of only $.01 in one account and a zero balance in another, as well as huge proceeds from sales in 2021 and 2022, the cryptocurrency accounts are completely relevant to the claims raised by the Trustee in this case.

The Debtor has not satisfactorily explained the loss of funds that were once in these accounts. More particularly, Debtor never offered an explanation for the $155,121.66 of purchases that were once in the accounts. Thus, the Debtor failed to rebut the Trustee's case under 11 U.S.C. § 727(a)(5). The UST met its burden under § 727(a)(5) by identifying the deficiency in Debtor's assets. The Debtor, however, failed to meet his burden to explain what happened to the $155,121.66 of transactions, as well as why these valuable assets were not timely disclosed to the UST. If it had not been for the UST and Mr. Grimes' due diligence in the execution of their responses, it is very likely Debtor would never have amended his Schedules.

For these reasons, the Court finds in favor of the UST on its claim to deny the Debtor a discharge under 11 U.S.C. § 727(a)(5).

## CONCLUSION

For all of the above reasons, the Court determines that the Debtor is not entitled to a discharge under Chapter 7 of the United States Bankruptcy Code pursuant to 11 U.S.C. § 727(a)(4)(A), § 727(a)(2) and § 727(a)(5). An Order incorporating the findings herein accompany this Memorandum-Opinion.

Joan A. Lloyd
United States Bankruptcy Judge
Dated: October 24, 2023

# UNITED STATES BANKRUPTCY COURT
# FOR THE
# WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ANTHONY BRADFORD HICKS | ) | CASE NO. 22-31254(1)(7) |
| | ) | |
| Debtor | ) | |
| | ) | |
| PAUL RANDOLPH, U.S. TRUSTEE | ) | |
| | ) | |
| Plaintiff | ) | AP NO. 23-03005 |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY BRADFORD HICKS | ) | |
| | ) | |
| Defendant | ) | |

## ORDER

Pursuant to the Memorandum-Opinion entered this date and incorporated herein by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Debtor, Anthony Bradford Hicks is not entitled to a discharge in bankruptcy case No. 22-31254 pursuant to 11 U.S.C. § 727(a)(4)(A), § 727(a)(2) and § 727(a)(5).

This is a final and appealable Order. There is no just reason for delay.

Joan A. Lloyd
United States Bankruptcy Judge
Dated: October 24, 2023